# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGILITY PUBLIC WAREHOUSING COMPANY K.S.C.<br>Sulaibia, P.O. Box 25418<br>Safat 13115<br>Kuwait City, Kuwait<br><br>AGILITY DGS LOGISTICS SERVICES COMPANY K.S.C.C.<br>Sulaibia, P.O. Box 25418<br>Safat 13115<br>Kuwait City, Kuwait<br><br>        and<br><br>PWC TRANSPORT COMPANY W.L.L.<br>Sulaibia, P.O. Box 25418<br>Safat 13115<br>Kuwait City, Kuwait<br><br>                Plaintiffs,<br><br>        v.<br><br>DEPARTMENT OF DEFENSE<br>1400 Defense Pentagon<br>Washington, DC 20301<br><br>DEFENSE LOGISTICS AGENCY<br>8725 John J. Kingman Road<br>Fort Belvoir, VA 22060<br><br>STEPHEN W. PRESTON, *in his capacity as*<br>*General Counsel, Department of Defense*<br>1400 Defense Pentagon<br>Washington, DC 20301<br><br>FRED T. PRIBBLE, *in his capacity as*<br>*General Counsel, Defense Logistics Agency*<br>8725 John J. Kingman Road<br>Fort Belvoir, VA 22060 | Civil Action No. _____ |

JOHN J. KARNS, *in his capacity as*    )
*Chief Counsel, DLA Distribution*    )
5081 J Avenue    )
New Cumberland, PA 17070    )
    )
NORMAND V. LUSSIER, *in his capacity as*    )
*Associate General Counsel,*    )
*Defense Logistics Agency*    )
8725 John J. Kingman Road    )
Fort Belvoir, VA 22060    )
    )
      and    )
    )
MEDARD R. KOWALSKI III, *in his capacity as*  )
*Contracting Officer, Defense Logistics Agency*    )
2001 Mission Drive    )
New Cumberland, PA 17070    )
    )
_____Defendants.\_\_\_\_\_)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.\ \ \ \ \ \ This is an action arising under the Administrative Procedures Act, 5 U.S.C. §§ 500 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Plaintiffs seek injunctive and other appropriate relief, including release of requested agency information and compliance with Plaintiffs' subpoenas in connection with litigation pending in the Court of Common Pleas for Cumberland County, Pennsylvania, captioned *Kuwait & Gulf Link Transport Company v. Doe*, No. 2012-1820 Civil Term.

### JURISDICTION AND VENUE

2.\ \ \ \ \ \ The Court has jurisdiction over the subject matter and the parties to this suit pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, and 28 U.S.C. § 2201. The denial of Plaintiffs' request for compliance with their subpoenas constitutes "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

2

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1) because this is an action against an agency of the United States, at least one defendant resides in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

4.      Plaintiffs Agility Public Warehousing Company K.S.C., Agility DGS Logistics Services Company K.S.C.C., and PWC Transport Company W.L.L. (collectively, "Agility") are Kuwaiti logistics companies.  Agility and its affiliates provide integrated logistics services, including air, ocean, and ground freight forwarding, warehousing and distribution services, and industrial real estate management.  Agility has provided logistics services to the United States government.

5.      Defendant Department of Defense ("DOD") is the executive branch department of the United States government responsible for coordinating and overseeing the military, and is an "agency" within the meaning of 5 U.S.C. § 701.

6.      Defendant Defense Logistics Agency ("DLA") is a component of DOD that provides combat support logistics for the military and certain federal agencies, and is an "agency" within the meaning of 5 U.S.C. § 701.

7.      Defendant Stephen W. Preston is the General Counsel for DOD.  In this capacity, Defendant Preston is authorized to release official DOD information in litigation and permit DOD personnel to be interviewed, contacted, or used as witnesses concerning official DOD information or as expert witnesses pursuant to 32 C.F.R. § 97.6.

8.      Defendant Fred T. Pribble is the General Counsel for DLA.  In this capacity, Mr. Pribble is authorized to release official DOD information in litigation and

3

permit DOD personnel to be interviewed, contacted, or used as witnesses concerning official DOD information or as expert witnesses pursuant to 32 C.F.R. § 97.6.

9. Defendant John J. Karns is the Chief Counsel for DLA Distribution. DLA Distribution is a command within DLA that operates distribution sites around the world in support of the military and certain federal agencies, and is an "agency" within the meaning of 5 U.S.C. § 701. In his capacity as Chief Counsel for DLA Distribution, Defendant Karns is authorized to release official DOD information in litigation and permit DOD personnel to be interviewed, contacted, or used as witnesses concerning official DOD information or as expert witnesses pursuant to 32 C.F.R. § 97.6.

10. Defendant Normand V. Lussier is Associate General Counsel (Contracting Integrity) for DLA. He has submitted a declaration in *Kuwait & Gulf Link Transport Company v. Doe*, No. 2012-1820 Civil Term, and is subject to an outstanding subpoena in that matter.

11. Defendant Medard R. Kowalski III is a Contracting Officer with DLA. He has submitted a declaration in *Kuwait & Gulf Link Transport Company v. Doe*, No. 2012-1820 Civil Term, and is subject to an outstanding subpoena in that matter.

### FACTUAL ALLEGATIONS

<u>Underlying Civil Litigation Against Agility</u>

12. On February 28, 2011, DLA awarded a contract to Kuwait & Gulf Link Transport Company ("KGL") to operate a military storage and distribution depot in Kuwait (the "DDKS contract"). Shortly thereafter, on March 10, 2011, a third party filed a bid protest before the Government Accountability Office ("GAO"), challenging the award of the DDKS contract to KGL.

13. On March 22, 2011, a whistleblower using the pseudonym "Scott Wilson" emailed a letter to U.S. government employees regarding ties between Kuwait & Gulf Link Transport Company ("KGL") and shipping companies sanctioned by the U.S. government for their ties to Iran's nuclear proliferation program, including the Islamic Republic of Iran Shipping Lines ("IRISL") and Valfajre-8 Shipping Company ("Valfajr"). Mr. Wilson emailed a second letter regarding KGL's ties with these sanctioned entities on March 24, 2011. These letters (the "Wilson Letters") were addressed to Medard R. Kowalski III, a contracting officer with DLA, among others.

14. At the time the Wilson Letters were sent, KGL in fact maintained an ongoing relationship with IRISL and Valfajr, including through joint ventures operating in Kuwait and the United Arab Emirates. Notwithstanding this relationship, the GAO dismissed the bid protest and KGL was allowed to retain the DDKS contract thanks to the assistance of counsel for DLA.

15. On October 31, 2011, KGL and two of its subsidiaries filed a defamation action in D.C. Superior Court against "Scott Wilson." An amended complaint was filed March 21, 2012, naming Agility and three U.S. subsidiaries as defendants based on allegations that Wilson was acting as their employee or agent in sending the Wilson Letters to DLA and other government entities. The D.C. Superior Court dismissed KGL's action on August 30, 2012 for *forum non conveniens*. KGL did not appeal.

16. On March 21, 2012, KGL and its subsidiaries filed a nearly identical defamation action in the Court of Common Pleas for Cumberland County, Pennsylvania, captioned *Kuwait & Gulf Link Transport Company v. Doe*, No. 2012-1820 Civil Term. KGL and its subsidiaries filed an amended complaint on June 14, 2012. Agility has

5

answered that amended complaint, denying liability.  As of the filing of this Complaint, the Pennsylvania action remains pending and no trial date or discovery deadlines have been set.  (KGL also filed and then voluntarily dismissed a third complaint against "Scott Wilson" and Agility, in Virginia.)

17. On September 14, 2012, KGL served discovery on Agility aimed at identifying "Scott Wilson."  Agility objected to this discovery on the ground that KGL had not satisfied the requirements set forth by Pennsylvania law for a defamation plaintiff to compel identification of a John Doe defendant.  *See Pilchesky v. Gatelli*, 12 A.3d 430 (Pa. Super. Ct. 2011).  Among other things, *Pilchesky* requires a plaintiff to present sufficient evidence to establish a *prima facie* case for all elements of its defamation claim, which is then balanced against the John Doe defendant's First Amendment right to anonymity.  *Id.* at 442-45.  *Cf. Solers v. Doe*, 977 A. 2d 941 (D.C. 2009) (establishing a similar five-part test).

18. On December 4, 2012, KGL moved to strike Agility's objections and compel responses to the discovery.  In support of this motion, KGL on February 6, 2013 submitted a declaration purportedly executed by Mr. Kowalski, the contracting officer who allegedly received the Wilson Letters.  *See* Exhibit A.  Mr. Kowalski's declaration discusses, among other things, his role as a contracting officer at DLA, the award of the DDKS contract to KGL, and DLA's receipt of and response to the Wilson Letters.  KGL asserted that the declaration was evidence in support of its *prima facie* case.

19. On July 12, 2013, KGL filed a renewed motion to strike and to compel discovery responses by Agility.  In support of that motion, KGL submitted a declaration purportedly executed by Normand V. Lussier, Associate General Counsel (Contracting

6

Integrity) at DLA. *See* Exhibit B. Mr. Lussier's declaration discusses, among other things, DLA's alleged investigation of KGL in response to the Wilson Letters. Citing this declaration, KGL has falsely asserted that PWC sent the Wilson Letters to purposely deceive the U.S. government.

20. On May 6, 2014, the Pennsylvania Superior Court vacated an order of the Pennsylvania Court of Common Pleas directing Agility to respond to KGL's discovery regarding the identity of "Scott Wilson," and remanded for application of the *Pilchesky* test. *See Kuwait & Gulf Link Transp. Co. v. Doe*, --- A.3d ---, 2014 WL 1797668 (Pa. Super. Ct. 2014). The Superior Court held that "the Wilson Letters constitute anonymous or pseudonymous political speech, thus receiving extensive constitutional protection under the First Amendment." *Id.* at *7. The Pennsylvania Court of Common Pleas has not yet engaged in the required *Pilchesky* analysis. Upon information and belief, KGL will once again attempt to use the declarations submitted by DLA employees, including Mr. Kowalski and Mr. Lussier, in an effort to meet its burden under *Pilchesky*.

<u>DLA's Involvement in the Civil Case Against Agility</u>

21. DLA's involvement with KGL's litigation against Agility extends well beyond the voluntary declarations provided in support of KGL's case by DLA employees Medard Kowalski and Normand Lussier.

22. Upon information and belief, DLA leaked the Wilson Letters to KGL shortly after receiving them. Wayne Keup, an attorney in the District of Columbia, received a copy of the March 22, 2011 letter from one or more DLA employees on or before March 23, 2011, and promptly provided that letter to David Hammond, a partner

at Crowell & Moring LLP who served as KGL's outside counsel in the GAO protest proceeding and, later, KGL's litigation against "Scott Wilson" and Agility.

23. On February 28, 2011, Mr. Kowalski received an email from an unrelated third party reporting information regarding KGL's ties with Iran. Mr. Kowalski responded to this email on March 8, 2011, acknowledging receipt of the same. *See* Exhibit C. Accordingly, DLA was on notice of KGL's ties with Iran before the Wilson Letters were sent in March 2011.

24. Upon information and belief, DLA entered into a common interest agreement with KGL in connection with the litigation against "Scott Wilson" and Agility. In the Pennsylvania litigation, KGL is currently withholding more than 70 communications between KGL's counsel and attorneys at DLA, including Mr. Lussier, on the basis of a purported "common interest" privilege between KGL and DLA.

25. DLA's communications with KGL's outside counsel regarding the Wilson Letters and the litigation against "Scott Wilson" and Agility span from at least April 25, 2011 through October 18, 2013.

    a. On April 25 and 26, 2011, Mr. Hammond exchanged emails with DLA attorneys Timothy Ryan and Daniel Poling regarding KGL.

    b. On May 10, 2011, Mr. Hammond sent an additional email to Messrs. Poling and Ryan regarding KGL.

    c. On June 23, 2011, Mr. Hammond emailed Mr. Lussier regarding the Wilson Letters.

    d. On July 2, 2011, Mr. Hammond again emailed Mr. Lussier regarding the Wilson Letters.

    e. On July 13 and 14, 2011, Mr. Hammond and Mr. Lussier exchanged multiple emails regarding the Wilson Letters.

    f. On July 25, 2011, Mr. Hammond and Mr. Lussier again exchanged multiple emails regarding the Wilson Letters.

g. On August 29, 2011, Mr. Hammond emailed Mr. Lussier and another DLA attorney, Noel Woodward, regarding Kuwaiti proceedings that, upon information and belief, are related to the civil litigation against "Scott Wilson" and Agility.

h. On August 15, 2011, Mr. Hammond again emailed Mr. Lussier and Ms. Woodward regarding KGL's litigation against "Scott Wilson."

i. On December 15 and 16, 2011, Mr. Hammond and Mr. Poling exchanged emails regarding KGL's litigation against "Scott Wilson."

j. Between January 19 and 24, 2012, Mr. Hammond and Mr. Poling exchanged further emails regarding the Wilson Letters.

k. Between March 20 and April 5, 2012, Mr. Hammond and Mr. Lussier exchanged additional emails regarding the Wilson Letters, KGL's litigation against "Scott Wilson" and Agility, and the GAO protest of the DDKS contract award.

l. Between May 15 and 30, 2012, Mr. Hammond and Messrs. Lussier and Poling exchanged additional emails regarding the Wilson Letters and internal KGL documents evidencing KGL's ties with IRISL and Valfajr.

m. On September 7, 2012, Mr. Hammond emailed Mr. Lussier and Ms. Woodward regarding KGL's litigation against "Scott Wilson" and Agility.

n. On December 12, 2012, Mr. Hammond sent multiple emails to Mr. Poling, Mr. Lussier, and Ms. Woodward regarding KGL's litigation against "Scott Wilson" and Agility.

o. Between January 8 and 30, 2013, Mr. Hammond and Mr. Ryan exchanged multiple emails regarding KGL's litigation against "Scott Wilson" and Agility.

p. Between June 21 and 26, 2013, Mr. Hammond and Mr. Lussier exchanged multiple emails regarding KGL's litigation against "Scott Wilson" and Agility.

q. Between October 1 and 18, 2013, Mr. Hammond, Mr. Lussier, Ms. Woodward, and Justin Lawrence, Legal Administrator and Chief of Operations of DLA's Office of General Counsel, exchanged multiple emails regarding the Wilson Letters.

<u>Agility's Subpoenas to DLA, Mr. Kowalski, and Mr. Lussier</u>

26. On March 6, 2014, Agility served DLA with a Notice of Video Deposition and Subpoena to Attend and Testify. *See* Exhibit D. Pursuant to Rule 4007.1(e) of the Pennsylvania Rules of Civil Procedure, Agility described with reasonable particularity

the matters to be inquired into and the materials to be produced, and directed DLA to designate one or more officers or other persons to testify on its behalf. The matters to be inquired into included the declarations submitted by the two DLA employees, DLA's alleged receipt of the Wilson Letters, and other matters relevant to KGL's litigation against Agility.

27. Also on March 6, 2014, Agility served Mr. Kowalski with a Notice of Video Deposition and Subpoena to Attend and Testify. *See* Exhibit E. The subpoena sought documents and deposition testimony relating to, among other things, Mr. Kowalski's declaration, his alleged receipt of the Wilson Letters, and other matters relevant to KGL's litigation against Agility.

28. Also on March 6, 2014, Agility served Mr. Lussier with a Notice of Video Deposition and Subpoena to Attend and Testify. *See* Exhibit F. The subpoena sought documents and deposition testimony relating to, among other things, Mr. Lussier's declaration, his involvement in any investigation of the Wilson Letters, and other matters relevant to KGL's litigation against Agility.

29. Agility's subpoenas to Mr. Kowalski and Mr. Lussier fully complied with DOD's *Touhy* regulations. *See* 32 C.F.R. § 97.6(c). Although those regulations do not provide a basis for DLA to respond to a subpoena directed to the agency itself (as opposed to one of its empoyees), Agility's subpoena to DLA also complied with DOD's *Touhy* regulations.

30. On March 14, 2014, DLA's counsel sent letters to Agility's counsel stating that DLA would not authorize its employees – including Mr. Kowalski and Mr. Lussier – to produce documents or testify in the underlying litigation unless Agility

10

provided "a detailed explanation of the relevance of the information" demanded by the subpoenas. *See* Exhibit G. Notwithstanding the obvious relevance of the information sought in light of DLA's prior involvement in this litigation, Agility's counsel provided the additional material requested by DLA in a letter dated April 25, 2014. *See* Exhibit H.

31. On May 30, 2014, DLA's counsel sent another letter to Agility's counsel. *See* Exhibit I. Citing 32 C.F.R. § 97.6, DLA's counsel refused to comply with the subpoenas. Specifically, DLA's counsel represented (i) that Mr. Kowalski was available for an interview only, (ii) that Mr. Lussier would not be made available for a deposition or interview, (iii) that Messrs. Kowalski and Lussier would not be permitted to produce any documents other than a redacted copy of their current resume or curriculum vitae, and (iv) that DLA would not produce any documents (other than the resumes or CVs) and would not designate an officer or other person to testify pursuant to Rule 4007.1(e). DLA's counsel also made vague and legally insufficient assertions of privilege and other protection for DLA information, but did not identify a single document subject to such privilege or protection (by, for example, providing a privilege log).

32. On June 6, 2014, Agility's counsel responded to the May 30 letter from DLA's counsel. *See* Exhibit J. Agility's counsel explained that DLA could not voluntarily provide testimony on behalf of KGL (specifically, declarations from Mr. Kowalski and Mr. Lussier), enter into a common interest agreement with KGL, and then refuse to produce documents or sit for a deposition regarding that testimony or other aspects of the litigation (or refuse to permit its employees to do so). Agility's counsel also identified numerous deficiencies in DLA's objections to the individual document

requests in the subpoenas and requested that DLA reconsider its response to the subpoenas on or before June 16, 2014.

33. On June 16, 2014, DLA's counsel responded to the June 6, 2014 letter. DLA's counsel again offered to make Mr. Kowalski available only for "an interview and, as appropriate, the taking of a declaration." DLA cited no legal authority for the notion that it may unilaterally convert a subpoena's demand for a deposition into an interview. The letter stated that Mr. Lussier could be made available for an interview and the "taking of a declaration" *only* "if other avenues and methods of obtaining relevant information had been exhausted," including a request to have Mr. Lussier respond to written questions. In addition, DLA produced only a copy of Mr. Kowalski's resume/curriculum vitae and Mr. Lussier's biographical statement. *See* Exhibit K. DLA counsel's letter was devoid of any response to Agility counsel's reiterated request to depose a DLA officer or other person designated pursuant to Rule 4007.1(e).

34. The information sought from DLA is crucial to Agility's defense in the underlying litigation brought by KGL. As of the date of the filing of this Complaint, DLA has refused to produce documents or designate an officer or other person as a deponent. Mr. Kowalski and Mr. Lussier likewise have not produced documents or appeared for a deposition.

## CAUSES OF ACTION

35. All preceding paragraphs are repeated, re-alleged, and incorporated as if fully set forth in this paragraph.

36. Defendant Preston, Defendant Pribble, and Defendant Karns are authorized to release official DOD information in response to Plaintiffs' subpoenas.

37. Defendant Lussier and Defendant Kowalski have not produced documents (except for a resume and CV) or appeared for their scheduled depositions.

38. Defendant DLA has not produced documents or designated an officer or other person as a deponent.

39. Neither 5 U.S.C. § 301 nor 32 C.F.R. Part 97 authorize Defendants to withhold the information sought by Plaintiffs.

40. Defendants' refusal to comply with Plaintiffs' subpoenas constitutes final agency action that adversely affects Plaintiffs.

41. Defendants' refusal to comply with Plaintiffs' subpoenas exceeded statutory jurisdiction, authority, or limitations, in violation of the Administrative Procedures Act.

42. Defendants' refusal to comply with Plaintiffs' subpoenas was arbitrary, capricious, and an abuse of discretion, in violation of the Administrative Procedures Act.

43. The Court should hold unlawful and set aside Defendants' refusal to comply with Plaintiffs' subpoenas under 5 U.S.C. § 706(2).

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully prays that this Court:

1. Declare that the Defendants' refusal to disclose the requested agency information and to comply with Plaintiffs' subpoenas exceeds statutory jurisdiction, authority, or limitations;

2. Declare that the Defendants' refusal to disclose the requested agency information and to comply with Plaintiffs' subpoenas is arbitrary, capricious, and an abuse of discretion;

3. Order the Defendants to comply with the subpoenas and permit the requested documents to be produced and depositions to be taken of Medard R. Kowalski III, Normand V. Lussier, and a DLA designee;

4. Provide for expedited consideration of this matter due to the pending civil case in the Court of Common Pleas for Cumberland County, Pennsylvania;

5. Award costs and reasonable attorneys' fees incurred in this action to the extent permitted by law; and

6. Grant such other relief as the Court may deem just and proper.

Dated: June 24, 2014                        Respectfully submitted,

/s/ David B. Leland
MARGARET E. KRAWIEC (D.C. Bar No. 490066)
   (*Pro hac vice* application forthcoming)
DAVID B. LELAND (D.C. Bar No. 484096)
THOMAS A. PARNHAM (D.C. Bar No. 1005976)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
Tel.: (202) 371-7000
Fax: (202) 393-5760

RICHARD MARMARO
   (*Pro hac vice* application forthcoming)
KRISTIN N. TAHLER
   (*Pro hac vice* application forthcoming)
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000
Fax: (213) 687-5600

*Attorneys for Plaintiffs Agility Public Warehousing Company K.S.C., Agility DGS Logistics Services Company K.S.C.C., and PWC Transport Company W.L.L.*