UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AGILITY PUBLIC WAREHOUSING
COMPANY K.S.C., et al.,

    Plaintiffs,

    v.

DEPARTMENT OF DEFENSE, et al.,

    Defendants.

Civil Action No. 14-1064 (JDB)

## MEMORANDUM OPINION & ORDER

Currently before the Court is [50] Agility's motion to reopen this case, which was voluntarily dismissed by the parties in August 2015, see Stipulation of Dismissal [ECF No. 49], and [51] Agility's motion for sanctions. Agility has also filed [59] a motion to supplement the record with "newly discovered" evidence. The government, meanwhile, has filed motions to hold in abeyance all but Agility's motion to reopen. See ECF Nos. 54, 60.[1] For the reasons that follow, the Court will deny the motion for sanctions, and deny the motion to reopen, the motions to hold in abeyance, and the motion to supplement the record as moot.

The Court will assume familiarity with the facts and procedural history of this case, which arises out of Agility's attempts to obtain documents and depositions from the Defense Logistics Agency (DLA) that Agility claims are necessary to its defense in a long-running state-court defamation case brought by a rival government contractor, Kuwait & Gulf Link Transport Co. (KGL). Agility previously brought this Administrative Procedure Act (APA) action challenging DLA's denial of several Touhy[2] requests; DLA eventually agreed to make two of its employees,

---

[1] The government has also filed [58] a motion to file a surreply to Agility's motion to reopen, which the Court will grant.

[2] United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).

1

Normand Lussier and Medard Kowalski, available for deposition, and produced more than 1,000 documents in response to Agility's requests. See Agility Public Warehousing Co., K.S.C. v. Dep't of Defense, 110 F. Supp. 3d 215, 219 (D.D.C. 2015). Now Agility seeks to reopen this case in order to obtain remedial sanctions, claiming that the government has not produced all that it previously agreed to produce, and that the government has also destroyed relevant emails by failing to issue a litigation hold to preserve documents. Agility bases these allegations on documents produced by KGL in the Pennsylvania litigation in February 2016, and on statements made by Lussier in his deposition that he was never issued a litigation hold. See Mot. for Sanctions at 9–13. Conveniently, the sanctions relief Agility seeks here is identical to additional Touhy requests that Agility made and DLA denied, and that are now the subject of a new APA challenge in Case No. 16-448.[3] Both here and in Case No. 16-448, Agility seeks to depose three additional attorneys from DLA: former General Counsel Fred Pribble, former counsel Noel Woodward, and chief trial attorney Daniel Poling. Compare Mot. for Sanctions at 3 with Compl. [16-448 ECF No. 1] ¶¶ 68–78.

## DISCUSSION

Courts retain jurisdiction on collateral issues, including sanctions, even after a voluntary dismissal; no motion to reopen is necessary. See, e.g., Heinrichs v. Marshall & Stevens Inc., 921 F.2d 418, 420–21 (2d Cir. 1990) (per curiam) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990)); Son Ly v. Solin, Inc., 910 F. Supp. 2d 22, 31 (D.D.C. 2012) (citing same); Akl v. Va. Hosp. Ctr., 471 B.R. 1, 8 (D.D.C. 2012) (citing same). The briefing from the parties on the sanctions motion has been less than helpful, in part because the government declined to actually address the sanctions issue, and in part because Agility has struggled to identify for the Court

---

[3] The Court has issued an opinion in Case No. 16-448 denying Agility's Touhy requests on this same date.

exactly what documents or information it believes it was entitled to, but that were lost because of DLA's failure to issue a litigation hold.  Agility seeks to depose DLA attorneys Poling, Woodward, and Pribble, arguing that they were all in possession of "responsive" emails, but appears to complain that it was Lussier's emails that were actually destroyed, necessitating sanctions.  Mot. for Sanctions at 3–4, 16–23.  At oral argument, Agility confirmed that it is Lussier's emails that Agility believes were destroyed, because Lussier's email inbox was not pulled until December 2014, but the government received Agility's Touhy requests in March 2014, and Lussier did not routinely save his emails.  Hrg. Trans. [ECF No. 66] 9:2–11; see also Ex. 14, Mot. for Sanctions [ECF No. 51-14] (DOJ letter confirming when Lussier's inbox was pulled and when DLA received Agility's Touhy request).

Thus, the first issue the Court must address is whether the government had an obligation to preserve Lussier's inbox, and when any preservation obligation began.  Typically, a party's preservation obligation begins once the party "reasonably anticipates that it will be subject to litigation."  Clarke v. Wash. Metro. Area Transit Auth., 904 F. Supp. 2d 11, 19–20 (D.D.C. 2012) (citing Shepherd v. Am. Broad. Co., 62 F.3d 1469, 1481 (D.C. Cir. 1995)).  Agility argues that DLA had a preservation obligation beginning in March 2012, when KGL filed the Pennsylvania litigation against Agility.  But non-parties do not usually have preservation obligations, except, for example, where one is triggered by "agreement, contract, statute, or other special circumstance." Mazloum v. D.C. Metro. Police Dep't., 522 F. Supp. 2d 24, 56 (D.D.C. 2007).  Agility claims that such a "special circumstance" exists here, because DLA was involved in the background of the Pennsylvania litigation, and submitted two declarations in that litigation explaining DLA's investigation of the Wilson letters, and one declaration asserting a common interest privilege between KGL and DLA relating to communications exchanged between the two during the course

3

of the investigation. Mot. for Sanctions at 19–20. But Agility cites no case law that would support a "special circumstance" finding here; instead, it cites cases dealing with the preservation obligations of parties. There is no question that neither DLA nor any government agency is a party to the Pennsylvania litigation. The Court thus finds the "special circumstances" argument unpersuasive.

Therefore, the earliest point at which DLA could have had a preservation obligation was in March 2014, when DLA received Agility's Touhy request. See Ex. 14, Mot. for Sanctions. At that point, DLA probably should have anticipated that it could be subject to litigation if it denied the Touhy requests, and that preservation of the documents underlying the request was therefore appropriate. Certainly, DLA had a preservation obligation once this suit was filed in June 2014 challenging the denial of Agility's Touhy request, and the Court is deeply troubled that the government apparently felt no obligation to preserve documents responsive to the Touhy request—which the government confirmed were not preserved as part of the administrative record—even at that point. See Hrg. Trans. 17:4–18:20.

At most, however, the universe of emails that were lost were those that were deleted from Lussier's inbox between March 2014 and December 2014, when DLA pulled Lussier's inbox for purposes of this litigation. As the Court understands it, some of these deleted emails were in fact turned over to Agility by KGL (presumably because Lussier had sent the emails to KGL and KGL therefore had copies). See, e.g., Ex. 9, Mot. for Sanctions [ECF No. 51-9] at 1; Mot. for Sanctions at 2–3. But it is unclear to what extent emails deleted between March and December 2014 contained information relevant to the events underlying the Pennsylvania litigation, which took place between 2011 and 2012. In other words, it is not clear that any emails from the relevant 2011–12 time period were still in Lussier's inbox when DLA's preservation obligation began in

4

2014. For the moment, though, the Court will assume that there are some relevant emails that were deleted, were not part of the KGL production, and which are now irretrievable.

Second, the Court must address the appropriate authority governing its ability to impose the remedial sanctions Agility seeks. Rule 37(e) of the Federal Rules of Civil Procedure provides that a court may "order measures no greater than necessary to cure the prejudice" caused by the loss of electronically stored information, including emails, "that should have been preserved in the anticipation or conduct of litigation," where the information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Alternatively, if a court finds that a party "acted with the intent to deprive another party of the information's use in the litigation," the court may "presume that the lost information was unfavorable to the party," or so instruct the jury, or dismiss the action or enter default judgment. Id. This provision forecloses a court's reliance on its inherent authority to order remedial measures for the loss of electronically stored information, at least in factual situations to which the rule applies, i.e., where the information cannot be substituted from another source. See id. Advisory Committee Notes to 2015 Amendment; cf. Clarke, 904 F. Supp. 2d at 20 (citing Shepherd, 62 F.3d at 1472) (discussing a court's inherent authority); Mahaffey v. Marriott Int'l, Inc., 898 F. Supp. 2d 54, 58 (D.D.C. 2012) (same). Regarding prejudice, the Advisory Committee Notes provide that "the rule does not place a burden of proving or disproving prejudice on one party or the other;" rather, the rule "leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment.

Agility argues that it is the Court's inherent authority to impose sanctions, not Rule 37(e), that should govern this case, because the destroyed electronic information here can be "replaced" through additional discovery, i.e., the depositions of additional DLA attorneys, and is therefore

5

not "lost" within the meaning of the rule. If so, Agility argues, then the rule does not apply. See Mot. for Sanctions at 15 n.16. But the Advisory Committee Notes appear to contemplate that the "replacement" of lost information would come from another electronic source, i.e., a duplicate of what was lost, not, for example, from depositions or some other form of discovery. See Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment (explaining that the rule "applies only when [electronically stored information] is lost," but "[b]ecause electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere").

Here, because the missing emails do not appear to have been stored elsewhere, this suggests that they are "lost" within the meaning of the rule, and therefore Agility's argument that the rule does not apply is incorrect. See, e.g., Living Color Enters., Inc. v. New Era Aquaculture, Ltd., No. 14-cv-62216, 2016 WL 1105297, at *5 (S.D. Fla. March 22, 2016) (discussing meaning of "lost"); CAT3, LLC v. Black Lineage, Inc., 164 F. Supp. 3d 488, 496–98 (S.D.N.Y. 2016) (same). The Court need not decide this issue, however. Even if the Court is exercising its inherent authority here to award remedial sanctions, the Court's conclusion is the same. Remedial sanctions pursuant to the Court's inherent authority "must be targeted to remedy the precise evidentiary issue," and it is because Agility's requested sanctions are not appropriately targeted to its claimed harm that the Court will deny the motion for sanctions. See, e.g., Clarke, 904 F. Supp. 2d at 20.

Assuming without deciding that Agility was prejudiced by the email destruction, the remedy that Agility seeks in its motion for sanctions is unrelated to this claimed loss. An appropriate remedy for the loss of Lussier's emails might be, for example, the deposition of Lussier—which Agility has already taken, and during which Agility questioned Lussier about his email retention practices and the missing documents produced by KGL. See Mot. for Sanctions

6

at 11–12.  Presumably, Agility could move to reopen Lussier's deposition if it felt it was missing information from Lussier regarding the deleted emails, but Agility has indicated that it does not plan to reopen the deposition at present.  Hrg. Trans. 4:9–11.  Agility argues that Poling, Woodward, and Pribble were "involved" in DLA's investigation of the Wilson letters, but it has utterly failed to explain how deposing them would remedy the loss of Lussier's emails, lending some weight to the government's argument that this motion is instead an attempt to circumvent Case No. 16-448 challenging DLA's denial of Agility's Touhy requests to depose these same three attorneys.  See Gov't Surreply [ECF No. 58-1] at 3.  The Court cannot conclude that the proposed depositions are an appropriate remedy for the email destruction.

While the majority of Agility's briefing focuses on the claimed destruction of Lussier's emails, Agility also complains that KGL's February 2016 production included emails from the government that were responsive to Agility and DLA's agreed-upon search terms, but which DLA had not itself produced in response to Agility's Touhy request.  Mot. for Sanctions at 9–10.  Agility argues, therefore, that this calls into question the government's thoroughness in its search and production of documents, making further sanctions in the form of the Poling, Woodward, and Pribble depositions appropriate.  Id.  In response to an inquiry from Agility, however, the government reviewed the KGL production and concluded that most of the identified documents had, in fact, already been produced to Agility by DLA, or were not responsive to Agility's Touhy request.  See Ex. 14, Mot. for Sanctions, at 2.  The government identified several documents that it claims are privileged and that it is trying to claw-back (this dispute is not before this Court), Ex. 12, Mot. for Sanctions [ECF No. 51-12], as well as a small number of documents that should have been produced but that were not in Lussier's inbox when it was pulled in December 2014, Ex. 14,

7

Mot. for Sanctions, at 1; see also Hrg. Trans. 59:17–60:2.  This last group of documents thus appears to be part of the lost Lussier emails described above.

Agility has not disputed any of the government's conclusions on this issue, but stated at oral argument that DLA failed to produce any emails from Pribble's or Woodward's inbox, and only pulled emails from one folder in Poling's.  See Hrg. Trans. 9:12–20, 69:2–24.  But Agility has not explained how this constitutes spoliation or a failure of the government to honor its production commitments.  Woodward's inbox was apparently destroyed in 2013 when she left DLA, before Agility's Touhy request was filed; thus, DLA had no preservation obligation with respect to her emails.  Hrg. Trans. 41:13–18; 61:20–24.  More importantly, Agility has known since May 2015 from whose inboxes the government pulled responsive emails, so it is unclear to the Court why this has just now become an issue.  See Mot. for Sanctions at 4 n.4; Decl. of Daniel Poling [ECF No. 41-3] ¶ 14.  In short, Agility has failed to coherently explain just what the problem is here.  Other than the Lussier emails discussed above, it has not identified what relevant documents, to which it is actually entitled, are missing from the government's production, and it certainly has not established prejudice for which the sanctions it has requested would be appropriate.  Rather, it appears that Agility has concluded that it needs more documents or additional depositions than it originally asked for—but it cannot obtain these by trying to shoehorn what is essentially a new Touhy request into a motion for remedial sanctions.  The motion for sanctions is therefore denied.

Likewise, the Court will deny Agility's motion to introduce additional evidence, having examined the supplemental materials that Agility proposes to submit.  The additional documents are two blog posts regarding this litigation, see Exs. A, C, Mot. to Suppl. [ECF Nos. 59-1, 59-3], and a letter from Senator McCaskill requesting a staff briefing about Agility's allegations

regarding KGL and DLA, see Ex. B, Mot. to Suppl. [ECF No. 59-2]. But there is no new information contained in any of these documents: the blog posts appear to be based on documents already filed in this case and in the Pennsylvania litigation, and Senator McCaskill's request for briefing is based on the allegations in the blog posts. Accordingly, there is nothing in these documents that would alter the Court's conclusions here, and the motion to supplement is denied as moot.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that [50] Agility's motion to reopen is **DENIED** as moot; it is further

**ORDERED** that [51] Agility's motion for sanctions is **DENIED**; it is further

**ORDERED** that [59] Agility's motion to supplement the record is **DENIED** as moot; it is further

**ORDERED** that [54] and [60] the government's motions to hold [51] and [59] in abeyance are **DENIED** as moot; and it is further

**ORDERED** that [58] the government's motion to file a surreply is **GRANTED**.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated:  March 30, 2017